**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

St. Paul Fire and Marine
Insurance Company and St. Paul
Guardian Insurance Company,

Petitioners,

v.

Courtney Enterprises, Inc.,

Respondent.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-1390 ADM/AJB

---

Michael R. Cashman, Esq., and Chad A. Snyder, Esq., Zelle, Hofmann, Voelbel & Gette, L.L.P., Minneapolis, Minnesota, appeared for and on behalf of the Petitioners.

Carey S. Davis, Esq., Martyn B. Hill, Esq., Pagel, Davis & Hill, P.C., Houston, Texas; Andrew S. Birrell, Esq., and Charles D. Slanc, Esq., Birrell, Dunlap & Ritts, Minneapolis, Minnesota, appeared for and on behalf of the Respondent.

---

## I. INTRODUCTION

Petitioners St. Paul Fire and Marine Insurance Company and St. Paul Guardian Insurance Company (collectively, "St. Paul") seek to compel arbitration [Doc. No. 1] against Respondent Courtney Enterprises, Inc. ("Courtney"). In response, Courtney filed a motion to dismiss for lack of personal jurisdiction [Doc. No. 3]. The undersigned United States District Judge heard both motions on July 11, 2000. For the reasons set forth below, St. Paul's motion to compel is granted.

AUG 1 0 2000
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD AUG 1 0 2000
DEPUTY CLERK

## II. BACKGROUND[1]

St. Paul is a Minnesota corporation with its principal place of business in St. Paul, Minnesota. See Pet. ¶ 3. St. Paul has an agent in Arlington, Texas. See Resp't Mem. Dismiss at 3. Courtney is a Texas corporation with its principal office located in Houston, Texas. See Courtney Aff. ¶ 1. St. Paul provided Courtney various forms of insurance beginning as early as 1989. The instant dispute involves Courtney's failure to reimburse St. Paul for handling claims pertaining to general liability, workers' compensation and employers liability insurance issued under, *inter alia*, policy numbers WVA9103840 and KKO9100101 (effective December 1, 1994 to May 1, 1995) and under policy numbers WVA9104417 and KKO9100160 (effective from May 1, 1995 to December 1, 1996) (collectively, the "1995/1996 Policies"). See Pet. ¶ 5. The 1995/1996 Policies list St. Paul as Insurer and St. Paul's Minnesota address

Through a series of Claims Service Agreements ("Service Agreements"), Courtney authorized St. Paul to resolve claims for Courtney who would then reimburse St. Paul. Two Service Agreements, dated January 1, 1992 and December 1, 1992 respectively, were written "by and between" Courtney and "St. Paul Risk Services, Inc., a *Minnesota corporation at 385 Washington Street, St. Paul, Minnesota*, 55102 . . . ." Pet'r Exs. A and C (emphasis added). The Service Agreements empowered St. Paul to handle claims on Courtney's behalf and defined the scope of the parties' rights and obligations, including general service fees and billing practices.

---

[1] On the day of oral arguments, July 11, 2000, Courtney's counsel presented this Court with an affidavit referencing correspondence from the Texas Department of Finance (Ex. A) and a copy of sections from the Texas Insurance Code (Ex. B). The Exhibits were offered to show that the Fourth Loss Deductible Agreement is invalid under Texas law. Not only were these submissions untimely, their review would improperly address the underlying merits of the instant case. The Court may not conduct such a review where a party seeks to enforce an arbitration clause. See Peabody Coalsales Co. v. Tampa Elec. Co., 36 F.3d 46, 47-48 (8th Cir. 1994).

Both contracts also require

> [a]ll notices, or time periods applicable thereto, required or permitted under [these Agreements] shall be effective as to St. Paul upon the mailing thereof in a stamped or postage-paid envelope to the following address:
>
> **St. Paul Risk Services, Inc.**
> **385 Washington Street**
> **St. Paul, Minnesota, 55102**
> **Attn: Phil See**

Id. (emphasis in original). Each Service Agreement has a general choice-of-law clause that reads: "This Agreement shall be governed by the laws of the State of Minnesota." Id. Most importantly, each Service Agreement contains an arbitration clause specifying Minnesota as the arbitral forum in the event of a dispute between the parties:

> 1. All matters in dispute in relation to this Agreement, and whether arising during or after the period of this Agreement, shall be referred for arbitration in the following manner . . .
>
> a. The matter shall be determined by arbitration conducted in the *City of St. Paul, State of Minnesota* in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect at that time. The arbitrator(s) shall apply *the substantive law of the State of Minnesota* as the proper law of this Agreement.

Id. (emphasis added).

In conjunction with the Service Agreements, the parties also executed annual Incurred Loss Deductible Agreements ("Loss Deductible Agreements"). Each Loss Deductible Agreement required Courtney to advance St. Paul substantial sums which St. Paul in turn would use to pay Courtney's claims. See Pet'r Mem. Opp. at 3. St. Paul would request additional monies as needed to pay claims and reimburse any funds "left over after all claims were

resolved." Id. Claims processed pursuant to the 1995/1996 Policies are covered by the Fourth Loss Deductible Agreement. See Pet'r Ex. D.

Like the Service Agreements, the Fourth Loss Deductible Agreement is "by and between" Courtney and "St. Paul Fire and Marine Insurance Company, *a Minnesota corporation at 385 Washington Street, St. Paul, Minnesota*, 55102, and/or one or more of its insurance company subsidiaries (hereinafter collectively referred to as 'St. Paul')." Id. at Ex. B (emphasis added). Like the Service Agreements, the Fourth Loss Deductible Agreement has a general choice-of-law clause: "This Agreement shall be governed by the laws of the State of Minnesota." Id. Although the Fourth Loss Deductible Agreement requires that the parties submit to arbitration disputes relating to any "misunderstanding as to the interpretation or application of any of the provisions," it does not specify the state where arbitration is to be conducted.

## III. DISCUSSION

### A. Minimum Contacts Analysis

Courtney maintains that the multiple contracts between the parties are insufficient to support personal jurisdiction. St. Paul, however, argues that exercise of personal jurisdiction is appropriate given the choice-of-law clauses in the multiple contracts between the parties, the long-term commercial relationship between the parties, and the parties' prior course of dealing.

The facts asserted to demonstrate specific jurisdiction are assessed in the light most favorable to St. Paul. See Aero Sys. Eng'g, Inc. v. Opron, Inc., 21 F. Supp. 2d 990, 995 (D. Minn. 1998). Specific jurisdiction is conferred "when a controversy is related to or arises out of a defendant's contacts with the forum, and there is a relationship among the defendant, the forum, and the litigation." Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc., 63

F.3d 694, 697 (8th Cir. 1995).

Two independent inquiries typically inform an assessment of personal jurisdiction: (1) whether the state long-arm statute, Minn. Stat. § 543.19, applies, and (2) whether this Court's exercise of jurisdiction satisfies due process requirements. See Minnesota Mining, 63 F.3d at 696-97. Under Eighth Circuit analysis, however, Minnesota has interpreted its long-arm statute to be coextensive with the limits of due process. See id. at 697. Accordingly, the present analysis collapses the two inquiries, focusing solely on whether exercising personal jurisdiction over St. Paul comports with federal due process. See id.

A court properly exercises personal jurisdiction over a nonresident defendant when the defendant has sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted). Sufficient contacts exist when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). A finding of reasonable anticipation requires that there be "some act by which the defendant purposefully avails itself of the privileges of conducting activities within the forum state, thus invoking the benefits and protection of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

The Eighth Circuit applies a five-factor test in analyzing the constitutional requirements needed for personal jurisdiction. See Wessels, Arnold & Henderson v. Nat'l Med. Waste, 65 F.3d 1427, 1435 (8th Cir. 1995); see also Rostad v. On-Deck, Inc., 372 N.W.2d 717, 719 (Minn. 1985). Three interrelated factors are considered to be of primary importance: (1) the nature and

quality of the contacts with the forum state; (2) the quantity of contacts with the forum; and (3) the relation of the cause of action to these contacts. See Northrup King v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995). There are two secondary factors: (1) the interest of the forum state in providing a forum for its residents; and (2) the convenience of the parties. See id.

In breach of contract cases, courts assess the purposeful availment component of personal jurisdiction by considering (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, and (4) the parties' actual course of dealing. See, e.g., Morris v. Barkbuster, Inc., 923 F.2d 1277, 1281-82 (8th Cir. 1991); Edmonton World Hockey Enter. v. Abrahams, 658 F. Supp. 604, 607 (D. Minn. 1987). The United States Supreme Court has emphasized:

> the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." It is these factors – prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing– that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum.

Burger King, 471 U.S. at 479 (quoting Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316 (1943)).

Neither party has addressed whether prior negotiations took place in Minnesota. Lack of physical presence in a forum, however, does not preclude assertion of personal jurisdiction. See Burger King, 471 U.S. at 476. Although Courtney may not have visited Minnesota, Courtney knew it was dealing with a Minnesota entity and purposefully availed itself of the benefits and

protections of Minnesota's laws.

First, the parties contemplated future consequences arising in Minnesota. The contracts created a continuing, long-term relationship between Courtney and St. Paul that endured for over ten years. Pursuant to a series of contracts, St. Paul agreed to service claims for Courtney's insurance policies. Each contract anticipated an ongoing relationship with a Minnesota entity. The nature of Courtney's contractual contacts with Minnesota "can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.'" Id. at 480.

Second, the parties agreed that Minnesota law would govern contractual disputes. The laws of Minnesota explicitly govern all the contracts, including the Fourth Loss Deductible Agreement. Standing alone, a choice-of-law clause does not convey jurisdiction over a contracting party. Such a clause, however, is a heavily weighed factor in deciding whether Courtney purposefully invoked the benefits and protections of Minnesota's laws. Choice-of-law clauses demonstrate a "defendant's deliberate affiliation with the forum State and the reasonable forseeability of possible litigation there." Edmonton, 658 F. Supp. at 607 n. 1.

Finally, the actual course of dealing between the parties also supports personal jurisdiction. Courtney entered into at least two Service Agreements that include forum selection clauses requiring arbitration in Minnesota. Even if not incorporated by reference into the Fourth Loss Deductible Agreement, the arbitral forum selection clauses in the Service Agreements evidence a strong relationship between the parties, the forum, and the arbitration. See Burger King, 471 U.S. at 480-81. See also Mellon Bank (East) PSFS, Nat'l Assoc. v. Farino, 960 F.2d 1271, 1273 (3d Cir. 1992); North Penn Gas Corp. v. Corning Natural Gas Corp., 897 F.2d 687, 691 (3rd Cir. 1990); Mountbatten Surety Co., Inc. v. Reagerharris Inc., 2000 WL 39063 (E.D. Pa.,

Jan. 18, 2000). Additionally, St. Paul's motion to compel arbitration arises from the contracts containing choice-of-law and forum selection clauses.

Minnesota strongly favors upholding valid arbitration clauses and has an interest in permitting its citizens to seek redress as provided by contractual terms. See, e.g., Telectronics Pacing Sys., Inc. v. Guidant Corp., 143 F.3d 428, 433 (8th Cir. 1998). Although, the convenience of the parties does not tip decidedly in either party's favor, the choice-of-law and forum selection clauses demonstrate Courtney's concession to Minnesota as a convenient forum for disputes relating to the services provided under the Fourth Loss Deductible Agreement. See id. In short, Courtney reasonably should have anticipated being haled into Minnesota for arbitration related to injury allegedly caused by its breach of contracts. Under the present facts, exercising personal jurisdiction over Courtney comports with notions of fair play and substantial justice.

**B. Implied Consent to Personal Jurisdiction**

Courtney's implicit consent to personal jurisdiction is an additional argument favoring arbitration in Minnesota. Parties may waive the personal jurisdiction requirement by implicit consent. See Burger King, 471 U.S. at 472 n.14. The United States Supreme Court has noted that,

> because the personal jurisdiction requirement is a waivable right, there are a "variety of legal arrangements" by which a litigant may give "express or implied consent to the personal jurisdiction of the court."

Id. (quoting Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982). Although the arbitration clause of the 1992 Service Agreements specify Minnesota as the forum of choice, the Fourth Loss Deductible Agreement does not.

Courts are reluctant to incorporate by reference forum selection clauses from documents that are merely peripheral to the parties' relationship or that are signed by only one of several defendants. See, e.g., Snider v. Lone Star Art Trading Co., 672 F. Supp. 977 (E.D. Mich. 1987); Lulling v. Barnaby's Family Inns, Inc., 482 F. Supp. 318 (E.D. Wisc. 1980). The Fourth Loss Deductible Agreement, however, is only one of a series of contracts establishing and defining the scope of the parties' underlying relationship. Minnesota forum selection clauses are contained in Service Agreements that are central to defining the parties' rights and obligations.

"[E]vidence of a prior course of dealing may establish a party's awareness of and consent to intended contractual terms." K.K.D. Imports, Inc. v. Karl Heinz Dietrich GmbH & Co. Int'l Spedition, 36 F. Supp.2d 200, 202 (S.D.N.Y. 1999) (quoting New Moon Shipping Co. v. MAN B & W Diesel AG, 121 F.3d 24, 30 (2nd Cir. 1997)). The importance of the Service Agreements strongly indicates that the parties incorporated the choice of forum clause in the Fourth Loss Deductible Agreement.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioners' Motion to Compel Arbitration [Doc. No. 1] is **GRANTED**;
2. Respondent's Motion to Dismiss for lack of personal jurisdiction [Doc. No. 3] is **DENIED**; and
3. Respondent's motion to strike hearing from calendar pursuant to 7.1(b)(2) and 7.1(d) [Doc. No. 5] is **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

Ann Montgomery

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: August 9, 2000

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd